**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTOPHER LOADHOLT, on behalf of himself and all others similarly situated,** | **Civil Case No.:**<br>**1:22-cv-02870-ALC** |
| **Plaintiff,** | |
| **-against-** | |
| **SHIRTSPACE,** | |
| **Defendant.** | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**MARCUS & ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:      (732) 695-3282**
**Email: yzelman@marcuszelman.com**
**Attorneys for Plaintiff**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT…………………………….………...……...……..…1

II.   STANDARD OF REVIEW……………………………………………………………2

III.  ARGUMENT………………………………………...……………………………...…..2

    A.  The Purpose Of The ADA………………………………………………………..2

    B.  Plaintiff's Claim Under The ADA……………………………………………………4

    C.  Mr. Loadholt Has Standing To Bring His Claim………………………………...10

    D.  Defendant's Online Store Is A Place Of Public Accommodation Under The ADA….14

    E.  Defendant's Motion to Dismiss Plaintiff's NYCHRL Claims Should Be Denied…...19

IV.   CONCLUSION………………………………………………………………………19

## TABLE OF AUTHORITIES

*Allaire Corp. v. Okumus,*

    433 F.3d 248 (2d Cir. 2006)…………………………………………………………..2

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*

    671 F.3d 140 (2d Cir. 2011)………………………………………………………..2

*Angeles v. Grace Prod., Inc.,*

    No. 20-CV-10167 (AJN), 2021 WL 4340427 (S.D.N.Y. Sept. 23, 2021)…………………8

*Ashcroft v. Iqbal,*

    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)…………………………………2

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)…………………………………2

*Camacho v. Vanderbilt Univ.,*

    2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019)………………………………………11, 12

*Del-Orden v. Bonobos, Inc.,*

    No. 17 CIV. 2744 (PAE), 2017 WL 6547902 (S.D.N.Y. Dec. 20, 2017)……………........14

*Doe v. Montefiore Med. Ctr.,*

    2013 WL 624688 (S.D.N.Y. Feb. 19, 2013)……………………………………………...19

*Dominguez v. Banana Republic, LLC,*

    No. 1:19-CV-10171-GHW, 2020 WL 1950496 (S.D.N.Y. Apr. 23, 2020)………………18

*Feltzin v. Clocktower Plaza Properties, Ltd.,*

    2018 WL 1221153 (E.D.N.Y. Mar. 8, 2018)……………………………………………...11

*Gonzalez v. Bahar Corp.,*

    No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567 (E.D.N.Y. Apr. 3, 2019)…12

*Hunter v. Palisades Acquisition XVI, LLC,*

    2017 WL 5513636 (S.D.N.Y. Nov. 16, 2017)…………………………………………...19

*Jaquez v. Aqua Carpatica USA, Inc.,*

    No. 20 CV 8487 (ALC), 2021 WL 3727094 (S.D.N.Y. Aug. 20, 2021)………………..7, 8

*John v. Whole Foods Mkt. Grp., Inc.,*

    858 F.3d 732 (2d Cir. 2017)……………………………………………………………..9

*Juscinska v. Paper Factory Hotel, LLC,*

    No. 18-CV-8201 (ALC), 2019 WL 2343306 (S.D.N.Y. June 3, 2019)…………………..13

*Kreisler v. Second Ave. Diner Corp.*,

 731 F.3d 184 (2d Cir. 2013)………………………………………………………………10, 12

*Lujan v. Defenders of Wildlife*,

 504 U.S. 555 (1992)………………………………………………………………………...10

*Markett v. Five Guys Enterprises LLC*,

 No. 17-CV-788 (KBF), 2017 WL 5054568 (S.D.N.Y. July 21, 2017)………………14, 15

*Noel v. New York City Taxi and Limousine Comm'n*,

 687 F.3d 63 (2d Cir. 2012)………………………………………………………………3

*Pallozzi v. Allstate Life Ins, Co*.,

 198 F.3d 28 (2d Cir. 1999)…………………………………………………..………2, 14, 15

*PGA Tour, Inc. v. Martin*,

 532 U.S. 661 (2001)………………………………………………………………………3

*Range v. 535 Broadway Grp. LLC*,

 No. 17CV0423, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019)……………………………19

*Quezada v. U.S. Wings, Inc.*,

 No. 20 CIV. 10707 (ER), 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021)………………..8, 13

*Roberts v. Royal Atl. Corp.*,

 542 F.3d 363 (2d Cir. 2008)………………………………………………………………..4

*Roman v. Greenwich Vill. Dental Arts P.C.*,

 No. 21-CV-5939 (JGK), 2022 WL 4226026 (S.D.N.Y. Sept. 13, 2022)…………………16

*Romero v. 88 Acres Foods, Inc.*,

 580 F. Supp. 3d 9 (S.D.N.Y. 2022)………………………………………………...15, 17

*Rosa v. 600 Broadway Partners, LLC*,

 175 F. Supp. 3d 191 (S.D.N.Y. 2016)……………………………………………………11

*Sanchez v. NutCo, Inc.*,

 No. 20-CV-10107 (JPO), 2022 WL 846896 (S.D.N.Y. Mar. 22, 2022)…………………..13

*Sullivan v. Study.com LLC*,

 No. 18-CV-1939 (JPO), 2019 WL 1299966 (S.D.N.Y. Mar. 21, 2019)……………………5

*Tavarez v. Moo Organic Chocolates, LLC*,

 No. 21-CV-9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022)…………………16

*Thorne v. Formula 1 Motorsports, Inc.*,

No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019)……………4, 5, 14

*Winegard v. Crain Commc'ns, Inc.*,

No. 20-CV-01509 (AJN), 2021 WL 1198960 (S.D.N.Y. Mar. 30, 2021)……………..18

*Wu v. Jensen-Lewis Co.*,

345 F. Supp. 3d 438 (S.D.N.Y. 2018)…………………………………………………...5, 6

Statutes and Other Sources

28 C.F.R. § 36.201……………………………………………………………………………3

29 C.F.R. § 1630.2(j)(3)(iii)…………………………………………………………………4

42 U.S.C. § 12101(a)(1)…………………………………………………………………...3

42 U.S.C. § 12101(a)(2)…………………………………………………………………...3

42 U.S.C. § 12101(a)(3)…………………………………………………………………...3

42 U.S.C. § 12182(a)…………………………………………………………………3, 4

42 U.S.C. § 12182(b)(2)(A)(iii)………………………………………………………5

75 Fed. Reg. 43460-01 (July 6, 2010)……………………………………………15

H.R. Rep. No. 101-485, pt. 2, p. 50 (1990)………………………………………16

*Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*,

106th Cong., 2d Sess. 65-010 (2000)……………………………………………..14

## I.       PRELIMINARY STATEMENT

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint.  Christopher Loadholt commenced this action via the filing of a Complaint which alleged that the Defendant violated the Americans with Disabilities Act (the ADA).    As alleged in the Amended Complaint, the Defendant operates the website www.shirtspace.com, from where it sells clothing and apparel – such as shirts, bags, hats, jackets and sweatshirts - to the general public.  Mr. Loadholt maintains that the Website is not compatible with the screen-reading software used by visually-impaired individuals such as himself, and that he and the putative class members have thereby been denied the same access to the Defendant's online store as those afforded to sighted individuals.  After Defendant filed a pre-Motion Letter seeking to dismiss the Complaint, the Plaintiff filed an Amended Complaint.

Defendant now moves to dismiss this action, based primarily on two separate arguments. *First*, Defendant argues that Mr. Loadholt lacks standing to sue, claiming that he failed to adequately plead the injury he suffered as a result of not being able to purchase clothing on the Defendant's website with the same ease as a sighted individual.  This argument is meritless, as a disabled person whose rights have been violated under the ADA clearly has standing to seek redress for those violations.  And Mr. Loadholt specifically alleged the accessibility barriers he encountered, the dates he encountered them, and the ways these issues prevented him from shopping at the Defendant's store in the same manner available to a non-disabled person.  For these same reasons, Defendant's related argument to dismiss the Amended Complaint under FRCP 12(b)(6), because of insufficient pleading, should similarly be rejected.

*Second,* the Defendant claims that dismissal is warranted because the Defendant's Website is not a place of public accommodation within the meaning of the ADA.  This argument has been

repeatedly rejected in this District and has, since 2017, been addressed by eight different S.D.N.Y. judges, and none of them (including two decisions earlier this year) have found Defendant's argument convincing. Each of these courts have uniformly interpreted *Pallozzi v. Allstate Life Ins, Co*., 198 F.3d 28, 32 (2d Cir. 1999) to find that standalone websites are under the purview of the ADA as "places of public accommodation." Indeed, stated differently, none of the many S.D.N.Y. judges who have examined this question have ever found that a standalone website is ***not*** encompassed by the ADA.

For the reasons set forth below, it is respectfully submitted that the Defendant's Motion to Dismiss the Amended Complaint should be denied in its entirety.

## II.    STANDARD OF REVIEW.

To survive a motion to dismiss pursuant to Federal Rule 12(b) (6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir. 2006). The same standard is applied to Motions to Dismiss filed under FRCP 12(b)(1). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

## III.    ARGUMENT.

### A. The Purpose Of The ADA.

Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to) or operates a place of public accommodation." 42 U.S.C. § 12182(a); see 28 C.F.R. § 36.201. As the Supreme Court has repeatedly recognized, Congress's purpose in enacting the ADA was broad: "to remedy widespread discrimination against disabled individuals." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674 (2001).

In enacting the ADA, Congress found that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination." 42 U.S.C. § 12101(a)(1). Moreover, "Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' " *PGA Tour*, 532 U.S. at 674-75. Congress identified many areas of society in which individuals with disabilities faced persistent discrimination, including "employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services." 42 U.S.C. § 12101(a)(3). "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need' for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.' " *PGA Tour*, 532 U.S. at 675. To remedy these ills, "Congress provided [a] broad mandate" in the ADA to effect the statute's "sweeping purpose." *Id.* "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n,* 687 F.3d 63, 68 (2d Cir. 2012).

**B. Plaintiff's Claim Under The ADA.**

Plaintiff's main claim in this action arises under the ADA. Section 302(a) of Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

Thus, to establish a Title III violation, a plaintiff must demonstrate "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

The first element of the *Roberts* test is easily met here. The Amended Complaint alleges that Mr. Loadholt "is visually impaired and legally blind, in that he has visual acuity with correction of less than or equal to 20 x 200." *See*, Docket 13, ¶5. The ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). Mr. Loadholt is disabled because he is substantially limited in the major life activity of seeing. *See* 29 C.F.R. § 1630.2(j)(3)(iii) ("[I]t should easily be concluded that the following types of impairments will, at a minimum, substantially limit the major life activities indicated: ... blindness substantially limits seeing"). "A legally blind person who requires screen-reading software to access the internet is disabled within the meaning of the ADA." *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098, *2 (S.D.N.Y. Dec. 19, 2019).

The second element is also easily met here, as every single court in this District has agreed. However, given that Defendant devotes the majority of its Motion addressing whether a website is a place of public accommodation, this element is separately addressed in Section D below.

Finally, the third *Roberts* element is met here as well. With respect to the third element, a website "is liable for 'discrimination' within the meaning of the ADA if, among other things, it fails to provide 'auxiliary aids and services' to ensure that the disabled are treated the same as other individuals." *Sullivan v. Study.com LLC*, 2019 WL 1299966, at *3 (S.D.N.Y. Mar. 21, 2019), citing 42 U.S.C. § 12182(b)(2)(A)(iii). In *Thorne,* the plaintiff alleged that "Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links." *See,* 2019 WL 6916098, at *3. Judge Oetken found that "these allegations, taken as true, plausibly show that Formula 1 discriminated against Thorne by denying him a full and equal opportunity to use its website." *Id.* Similar allegations were found sufficient to state a claim by Judge Ramos in *Wu v. Jensen-Lewis Co*., 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018):

> In her complaint, Wu cites four such barriers. First, Wu alleges that graphical images on Jensen-Lewis's website lack alternative text ("alt-text") or a text equivalent. Alt-text enables screen-reading software to vocalize a description of an image to users. Second, Wu alleges that Jensen-Lewis's website has empty links that contain no text. These empty links' functionality is confusing to screen-reader users. Third, Wu alleges that the website contains redundant, adjacent links. Redundant, adjacent links go to the same URL address, resulting in additional, unnecessary navigation efforts for screen-reader users. Fourth, Wu alleges that linked images on the website lack alt-text. Without alt-text, a user would not know what function a linked image has when he or she clicks on it.

> The Court finds that these allegations, taken as true, plausibly show that Jensen-Lewis discriminated against Wu by denying her a full and equal opportunity to use its website. They are specific facts concerning Jensen-Lewis's website. Consequently, Wu has made a plausible claim under Title III of the ADA

> *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d at 443.

In this case, the allegations in the Amended Complaint are far more specific than those pled in *Thorne* and *Wu.* The Amended Complaint alleges that, on March 24, 2022 and June 16,

2022, the Plaintiff visited the Defendant's website with the intention of shopping for T-Shirts for himself. *See,* Docket 13, ¶23, 24, 30. However, as alleged in the Amended Complaint, "many features on the Website fail to accurately describe the contents of graphical images, fail to properly label title, fails to distinguish one page from another, contain multiple broken links, contain headings that do not describe the topic or purpose, and the keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible." *See,* Docket 13, ¶27. If a Website does not accurately describe the content of a graphical image, for example, a visually impaired individual who is not fully blind may see a fuzzy image on the screen, but cannot select the image to hear his screen-reader software describe what the image depicts. *See e.g., Wu,* 345 F. Supp. 3d at 443 (explaining that "Alt-text enables screen-reading software to vocalize a description of an image to users" and finding that such allegations are sufficient to survive a motion to dismiss).

The Amended Complaint goes even further, and gives several even more specific examples of accessibility issues encountered on the Defendant's website. For example,

- The Plaintiff encountered multiple dead links and missing graphic information when browsing the website. Many links were dead with no description of where they were sent. *See,* Docket 13, ¶28(a).

- Many items were missing information, and the Plaintiff would only be told "blank" when cycling through elements of the website, preventing the Plaintiff from being able to navigate the Website. *See,* Docket 13, ¶28(b).

- When attempting to add an item to the shopping cart to checkout, the Plaintiff would first have to cycle through every single filter option, which takes a few minutes to just view the item. *See,* Docket 13, ¶28(c).

- The filters did not properly explain what options were available to the Plaintiff, preventing the Plaintiff from navigating the pages properly or completing his purchases. *See id.*, ¶28(d).

These allegations are specific and describe a website which plainly does not work properly with the screenreader software commonly employed by the blind community, and which clearly does not offer visually impaired individuals the same access to the Defendant's online store as that offered to sighted individuals. These allegations are more than sufficient to put the Defendant on notice as to several of the exact accessibility barriers that Mr. Loadholt encountered when he tried to navigate the Defendant's website in order to purchase T-Shirts for himself. Defendant cites to this Court's holding in *Jaquez v. Aqua Carpatica USA, Inc.*, No. 20 CV 8487 (ALC), 2021 WL 3727094 (S.D.N.Y. Aug. 20, 2021) as support for its argument that the Plaintiff's allegations are insufficient here. But the *Aqua Carpatica* case actually helps the Plaintiff's case, rather than hurts it, because that holding indicates that these allegations *would* be sufficient to survive a Motion to Dismiss.

In *Aqua Carpatica*, this Court granted the defendant's Motion to Dismiss, finding that the plaintiff in that action did not sufficiently allege he had suffered an injury, because he had failed to identify the type of product he was seeking to purchase. *See id.,* at *4 (granting motion to dismiss the plaintiff's complaint because "it is not sufficient to claim that he suffered an injury in fact by casually going on the website with the intent of browsing and potentially purchasing a product without identifying the product that he was prevented from purchasing"). Even though this Court granted the motion to dismiss on those grounds, it still addressed the remaining challenges to the plaintiff's allegations in that action, indicating that if the *Aqua Carpatica* plaintiff <u>had</u> identified the products he was trying to purchase, then the Motion likely would have been

denied. *See id.,* at *6 ("As discussed supra, Plaintiff has not successfully pleaded an injury in fact with sufficient clarity of the product that he was prevented from purchasing on Defendant's website when he visited the website on September 20, 2020, or December 23, 2020. Plaintiff has also not articulated the product that he desires to buy in his wish to return to the website in the future. If Plaintiff had adequately alleged that he suffered an injury in fact, his complaint may have survived Defendant's motion to dismiss").

In this action, the Plaintiff's Amended Complaint does not suffer from the same pleading deficiencies that were presented in the *Aqua Carpatica* matter, because Mr. Loadholt specifically alleges that he was trying to purchase some T-Shirts for himself from the Defendant's website. *See,* Docket 13, ¶24. This specific allegation isn't 'effectively empty', as Defendant argues – particularly not on a website that sells many things other than T-Shirts, such as hats, coats, bags, button-down shirts and sweatshirts. While Defendant believes that Mr. Loadholt should be required to list exactly *which* T-Shirts that he attempted to purchase, such a heightened pleading requirement is not something that is required by FRCP 8, as the Honorable (now-Circuit) Judge Nathan recently recognized:

> Defendant argues that she did not state which exact product she intended to buy and on which page, but that is not necessary on this set of facts. The central allegation in her complaint is that she went to Defendant's website with the intent of making a purchase but was not able to properly navigate the different pages of Defendant's website, nor was she able to differentiate between Defendant's various products in order to decide which one, if any, she wanted to purchase.

*Angeles v. Grace Prod., Inc.*, No. 20-CV-10167 (AJN), 2021 WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021). *See also, Quezada v. U.S. Wings, Inc.,* No. 20 CIV. 10707 (ER), 2021 WL 5827437, at *1 (S.D.N.Y. Dec. 7, 2021)(denying Motion to Dismiss ADA website claim where the plaintiff alleged he visited the defendant's clothing website to "purchase…jackets and leather vests").

So too here.  As described in the Amended Complaint, Mr. Loadholt went shopping on the Defendant's website because he wanted to purchase some T-Shirts for himself.  *See,* Docket 13, ¶24.  He wasn't able to complete his purchase because *inter alia* his screenreader kept encountering links with missing information, which would just read 'blank' to the Plaintiff as he attempted to navigate the website.  *See id.,* 28(b).  Similarly, the website would not let the Plaintiff see what options were available to him or let him add items to the shopping cart for checkout.  *See id.,* 28(c), (d).  Particularly when considering that the Second Circuit has described the 'injury-in-fact' requirement as a "low threshold", *see, John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017), these allegations should meet the Rule 8 requirement at this early stage of the case.

This is not a case making allegations of fraud, which would require a heightened pleading standard under FRCP 9.  Instead, FRCP 8 governs here, and only requires a short and plain statement of the request for relief.  Requiring the blind Plaintiff to (for example) specifically identify that he was prevented from purchasing a "Gildan G500 Heavy Cotton 100% Cotton T-Shirt" would be to raise this pleading standard to a level of specificity not required in other ordinary cases.  Moreover, it would entirely overlook these allegations that the Plaintiff was prevented from being able to browse and shop for T-Shirts for himself – a task which was impossible to do, because the website was not relaying the required information to his screenreader software.

Finally, Defendant's insistence on an artificially-heightened pleading requirement would be turning a blind eye to how the average person goes shopping for casual wear.  As common sense tells us, rarely does one go to a specific store with a laser focus on a specific T-Shirt, to the exclusion of other, potentially more attractive T-Shirts, on the racks also offered by that retailer.  That is generally not how people shop – they go to a store looking for an item they need (such as shirts, for example) and then browse the available shirts offered in that store.  This hardly means

that such a person hasn't suffered an injury in fact if they were prevented from having a reasonably similar shopping experience to that offered to sighted individuals, unless they can specifically list the exact T-Shirts they wanted to purchase for themselves while shopping at the Defendant's store. It is therefore respectfully submitted that the Complaint in this action does not suffer from the same pleading deficiencies as at issue in *Aqua Carpatica* and – as in *Angeles* – suffice at this Rule 12 stage of the case.

### C.  Mr. Loadholt Has Standing To Bring His Claim.

Mr. Loadholt has standing to bring this lawsuit because he has suffered a concrete harm that is particularized to him – being personally subjected to discriminatory treatment.  "To satisfy constitutional standing requirements, a plaintiff must prove: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.,* 731 F.3d 184, 187 (2d Cir. 2013); *see also, Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Where, as here, a plaintiff seeks injunctive relief, he also must demonstrate "that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler,* 731 F.3d at 187 (citation and internal quotation marks omitted).

Applying these requirements in the ADA context, courts have found "standing (and therefore an injury in fact) where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location." *Id.* at 187-88.  The courts have also held that "in reviewing standing under the ADA, a broad view of constitutional

standing is appropriate because private enforcement suits are the primary method of obtaining compliance with the Act." *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9 (S.D.N.Y. Dec. 4, 2019); *Feltzin v. Clocktower Plaza Properties, Ltd.*, 2018 WL 1221153, at *3 (E.D.N.Y. Mar. 8, 2018); *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016).

In this case, Mr. Loadholt specifically identified how he was trying to browse the Defendant's online store in order to buy T-Shirts for himself, but was prevented from doing so because of the Website's incompatibility with his screen-reading software. Mr. Loadholt specifically also detailed his intent to return to the Website once it is made accessible. Mr. Loadholt visited the site on March 24, 2022, but was not able to browse the Website in the same manner as a sighted individual because of the accessibility barriers outlined above. *See,* Docket 13, ¶23-24. Mr. Loadholt then returned to the Website on June 16, 2022 to continue with his browsing and purchase experience, so that he purchase some T-Shirts for himself. *See id.*, ¶23-31. But, again, he was prevented from doing so, because of those same accessibility barriers. *See id.*

The Amended Complaint specifically alleges that "Plaintiff would still like to return to the Website to browse and potentially purchase several T-Shirts once it is made accessible to him, and intends to do so once the site is made accessible." *See id.,* ¶32. And as Mr. Loadholt's return visit to the Website on June 16, 2022 makes clear, Mr. Loadholt's desire to continue shopping at the Website is not something that is merely conjectural or conclusory – he (1) went to that Website to purchase T-Shirts, (2) was not been able to purchase those T-Shirts on that date, and (3) has already returned to the Website at least once to try to finish purchasing those T-Shirts.[1] These facts make

---

[1] *Harty v. Simon Prop. Grp., Ltd. P'ship*, 428 F. App'x 69 (2d Cir. 2011) (finding standing where Plaintiff indicated planned to "return to the property to avail himself of the goods and services offered to the public" to determine if the property was compliant).

this case distinguishable from the *Calcano* case relied on by the Defendant, which addressed the inadequate allegations of plaintiffs who vaguely and implausibly alleged the intent to return to physical locations that they were nowhere near.[2]  *See, Gonzalez v. Bahar Corp.*, No. 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567, at *6-8 (E.D.N.Y. Apr. 3, 2019)(noting that "[t]his 'plausible intention or desire' does not require a specific date for plaintiff's return to the location, or in this case, website[,]" and finding that the plaintiff's "desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan*, [the plaintiff] is not alleging an intent to return to a physical location, let alone a distant one.").

Under these facts, it is clear that Mr. Loadholt has standing to sue.  In *Camacho v. Vanderbilt Univ.*, No. 18 CIV. 10694 (KPF), 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019), Judge Forrest held that the ADA plaintiff had standing to sue because of similar accessibility issues with a website:

> Plaintiff has sufficiently alleged each of the three factors necessary to find standing under the ADA. First, Plaintiff claims that he suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188.

> *Camacho v. Vanderbilt Univ.*, 2019 WL 6528974, at *9.

---

[2] *See e.g., Calcano v. Swarovski N. Am. Ltd.,* 36 F.4th 68, 77 (2d Cir. 2022)("Murphy asserts that he would return to a Kohl's that doesn't exist. Dominguez seeks to go back to Banana Republic for its food. Thorne doesn't even allege where he lives, making an assessment of proximity to a Jersey Mike's impossible. Calcano plans to travel from somewhere in the Bronx to Columbus Circle for a shaving supply gift card").

In *Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC), 2019 WL 2343306 (S.D.N.Y. June 3, 2019), this court similarly found that an ADA plaintiff who has been denied equal access to a website properly stated a claim, under very similar allegations.  In that case, this Court rejected a motion to dismiss, where:

> as alleged in the Complaint, Plaintiff was not able to browse Defendant's website and make a reservation with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms. Plaintiff was unable to discern the accessible features of rooms that would meet her needs. Defendant's website did not provide Plaintiff with the opportunity to evaluate the suitability of common areas and the amenities Defendant provides to its guests. Taking the facts in the Complaint as true, it is plausible that, at the time Plaintiff visited Defendant's website, it was not compliant with the ADA as interpreted by the DOJ.

*Juscinska v. Paper Factory Hotel, LLC*, 2019 WL 2343306, at *3.

Finally, in *Quezada v. U.S. Wings, Inc.*, No. 20 CIV. 10707 (ER), 2021 WL 5827437 (S.D.N.Y. Dec. 7, 2021), Judge Ramos found that the require 'intent to return' was adequately established as well.  In that action, the plaintiff alleged that he intended to "purchase leather jackets and military branded apparel in the future from the website" and "remains hopeful that the accessibility barriers are or will be cured."  *Id.,* at *3.  Judge Ramos found that these allegations sufficed to demonstrate a plausible intent to return to the site:

> The Court finds that Quezada has sufficiently shown an intent to return to the website. First, Quezada does specifically state his intent to return to the website if accessibility issues were remediated. Doc. 13 ¶ 35. Second, there is no information suggesting that U.S. Wings does not deliver to individuals in Quezada's jurisdiction as in Guglielmo. As stated in the Amended Complaint, the products offered by U.S Wings are available for purchase and delivery nationwide. Id. ¶ 24. As websites are already easily accessible at any moment, Quezada's claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing.

*Quezada v. U.S. Wings, Inc.*, 2021 WL 5827437, at *4.  *See also, Sanchez v. NutCo, Inc.,* No. 20-CV-10107 (JPO), 2022 WL 846896, at *3 (S.D.N.Y. Mar. 22, 2022)(agreeing that ADA plaintiff sufficiently alleged an intent to return to the defendant's website, where "Sanchez alleges

that he unsuccessfully tried to navigate the Website, that the site's barriers deter him from visiting the Website in the future, and that he intends to visit the site again in the future when the barriers are cured").

**D. Defendant's Online Store Is A Place Of Public Accommodation Under The ADA.**

Defendant devotes the bulk of its Motion to arguing that an online store is not a place of public accommodation encompassed by the ADA. The unanimous view of the judges in this District is flatly to the contrary. *See e.g., Del-Orden v. Bonobos, Inc.,* 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017)(Engelmayer, J.)("A commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access"); *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568 (S.D.N.Y. July 21, 2017)(holding that a fast food restaurant's website, was "covered under the ADA, either as its own place of public accommodation or as a result of its close relationship as a service of defendant's restaurants, which indisputably are public accommodations under the statute"); *Thorne v. Formula 1 Motorsports, Inc.*, No. 19-CV-1077 (JPO), 2019 WL 6916098 (S.D.N.Y. Dec. 19, 2019). In *Thorne,* the Honorable Judge Oetken rejected the notion that the ADA solely is concerned with enabling access to physical locations, citing the Second Circuit's finding that the ADA "was meant to guarantee [disabled individuals] more than mere physical access" *Id.,* at *2, <u>citing</u> *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28, 32 (2d Cir. 1999).

As noted by Judge Forrest in *Markett*, finding commercial websites to be a 'public accommodation' under the ADA also aligns with the position taken in various contexts by the Department of Justice, which is responsible for enforcing Title III. *See, Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568, fn3, <u>citing</u> *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion

14

of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). "The DOJ's position in this regard is entitled to some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Markett v. Five Guys Enterprises LLC*, 2017 WL 5054568, footnote 3.

As these holdings reflect, websites in and of themselves are places of public accommodations under the ADA. This settled legal principle (supported by eight S.D.N.Y. district judges, six of whom Defendant failed to cite or analyze) logically flows from the findings of the Second Circuit in *Pallozzi*, which held that Title III's mandate ensures:

> full and equal enjoyment of the goods [and] services . . . of any place of public accommodation" to disabled individuals, which suggests that "the statute was meant to guarantee [disabled individuals] ***more than mere physical access***.

*Pallozzi*, 198 F.3d at 32 (Emphasis added).

*Pallozzi*'s holding that business transactions with the public are what defines a public accommodation– regardless of whether they are conducted physically in a store or by some another means unrelated to a physical location – contradicts Defendant's assertion that Congress chose not to regulate commerce that occurs on websites.  Based on this reasoning, courts in this District, and others throughout this Circuit, have emphasized that it is the sale of goods and services to the public – and not the location of the transactions – that matters when assessing whether the protections of the ADA apply. *See, Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 20 (S.D.N.Y. 2022)( holding that "by including 'travel service' in the list of 'public accommodations,' Congress allowed the statute to apply to places other than physical entities").

Just several weeks ago, the Honorable Judge Caproni rejected the exact argument advanced by the defendant here. *See, Tavarez v. Moo Organic Chocolates, LLC*, No. 21-CV-9816 (VEC), 2022 WL 3701508 (S.D.N.Y. Aug. 26, 2022). In *Tavarez*, Judge Caproni found that the statutory framework supports the conclusion that online business are places of public accommodation because "the list of public accommodations includes at least one service that is not tethered to a particular physical location." *Id.,* at *3. Judge Caproni then noted that the text of the statute supported this conclusion as well, because "the statute's stated purpose is to 'provide a clear and comprehensive national mandate' to eliminate discrimination against disabled individuals. 42 U.S.C. § 1210(b)(1). Although websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a location to access their goods and services indicate that websites are within the broad reach Congress intended Title III to have." *Id.* Finally, Judge Caproni agreed that requiring websites to have a physical nexus, before subjecting those sites to the strictures of the ADA, would be contrary to Congress' purpose in enacting the statute:

> Congress' intent in passing the ADA was to integrate disabled individuals "into the economic and social mainstream of American life." H.R. Rep. No. 101-485, pt. 2, at 50 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 332. Congress also passed the law with an expectation that it would encompass evolving technology. *Id.* at 108, *as reprinted in* 1990 U.S.C.C.A.N. at 391 ("[T]he Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times.").[4] To limit the ADA's reach to a point short of goods and services that are only available on the Internet, where much if not most American consumer research and purchasing now occurs, would contravene Congress' clearly-stated purpose of bringing disabled individuals into the economic mainstream of American life.

*See id. See also, Roman v. Greenwich Vill. Dental Arts P.C.*, No. 21-CV-5939 (JGK), 2022 WL 4226026, at *3 (S.D.N.Y. Sept. 13, 2022)(citing *Tavarez* and *88 Acres* approvingly, noting

that "many well-reasoned decisions in this Circuit have found that websites are places of public accommodation, with or without a nexus to a physical place").

The Defendant argues that the Court should reject the uniform holdings reached by these courts, and that it should instead side with the contrary reasoning of the Eastern District of New York in the *Winegard v. Newsday LLC* case. The Honorable Judge Wood recently rejected this argument, agreeing with the First and Seventh Circuit's findings that interpreting the term "place of public accommodation" to encompass websites makes sense in light of the ADA's reference to *both* physical and non-physical places of business. *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 20 (S.D.N.Y. 2022). This decision unequivocally held that "websites qualify as places of public accommodation, albeit electronic ones, and as such are required to provide equal services to visually impaired and sighted people." *Id.* at 19. After a thorough analysis of foreign circuits, including the Third, Sixth and Ninth Circuit, as well as the E.D.N.Y. decision in *Winegard v. Newsday LLC*, 19-cv-04420(EK)(RER), 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021), Judge Wood wrote "[t]his Court does not find *Winegard's* reasoning compelling." *Id.* at 18-19.

Specifically, looking to the language of Section 12181(7) of the ADA, Judge Wood found that in addition to listing physical places such as restaurants, hotels, and gymnasiums as covered accommodations, other entities such as "travel services" were listed. *Id.* Additionally, Judge Wood noted that the relevant section lists "other sales or retail establishments" as covered entities. These additions must indicate that non-physical retailers are covered for otherwise, *88 Acres* held, one could come out with the "absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods." *Id.* at 20. Judge Wood further noted that the Congress intended to "integrate [disabled individuals] into the economic and social mainstream of American life," and "that the types of accommodations and services provided to

17

individuals with disabilities, under all titles of this bill, should keep pace with the rapidly changing technology of the times." *Id*. (citations omitted). From this language, it is clear Congress intended to regulate entities which directly provide goods and services to the general public, not solely the entities which physically did so in 1990, nor was it Congress' intent to shunt the disabled community into those separate, specific institutions.

Rejecting the E.D.N.Y.'s reasoning in *Winegard*, Judge Wood then determined that the constructions *noscitur a sociis* and *ejusdem generis*, should be read in the context of this catch-all clause regarding service and other retail establishments as encompassing non-brick-and-mortar sales establishments. *Id*. at 20. Furthermore, Judge Wood analyzed the legislative history of the ADA, noting that Congress intended that the "types of accommodation and services provided to individuals with disabilities . . .should keep pace with the rapidly changing technology of the times." *Id*. This applies to the large volume of interstate commerce transacted through websites. *Id*. Given the prominence of online retail establishments in providing goods and services directly to customers, Congress' intent in passing the ADA would be stymied were public accommodations limited to physical spaces.

In its Motion, the Defendant mentions none of these holdings, despite it being the prevailing view of the many judges in this District to have considered the issue. Nor does Defendant mention:

- Now-Circuit Judge Nathan's decision in *Winegard v. Crain Commc'ns, Inc.*, No. 20-CV-01509 (AJN), 2021 WL 1198960, at *2 (S.D.N.Y. Mar. 30, 2021), agreeing that "websites qualify as places of public accommodation under the ADA."

- Judge Woods decision in *Dominguez v. Banana Republic, LLC*, No. 1:19-CV-10171-GHW, 2020 WL 1950496, at *8 (S.D.N.Y. Apr. 23, 2020), agreeing with these

holdings that the ADA encompasses "private commercial websites even if those websites existed entirely online and had no nexus to a physical storefront."

- Judge Failla's decision in *Paguada v. Athena Allergy*, which reached the same conclusion[3].

### E.  Defendant's Motion to Dismiss Plaintiff's NYCHRL Claims Should Be Denied.

Defendant first challenges the Plaintiff's ability to bring his NYCHRL claims, based on the same lack-of-standing argument already debunked above.  Defendant then moves to dismiss the Plaintiff's request for punitive damages.  But that Motion cannot be made at this stage of the litigation and is premature.  *Range v. 535 Broadway Grp. LLC*, No. 17CV0423, 2019 WL 4182966, at *7 (S.D.N.Y. Sept. 3, 2019)(in ADA case, holding that "To the extent Defendants move to "dismiss" Range's request for punitive damages, that motion is procedurally premature.  Punitive damages are a type of damages, not a claim for relief"); *See also, Hunter v. Palisades Acquisition XVI, LLC*, 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017); *Doe v. Montefiore Med. Ctr.*, 2013 WL 624688, at *7 (S.D.N.Y. Feb. 19, 2013).

### IV.    CONCLUSION.

It is respectfully submitted that the Defendant's Motion to Dismiss should be denied in its entirety.  In his Amended Complaint, the Plaintiff specifically describes the dates he visited the Defendant's online store, the reasons he visited that store and the accessibility barriers that prevented him from completing his purchases.  While the Defendant insists that more is needed, no such heightened pleading standard is required at this early stage of the case.  Finally, the

---

[3] Because Judge Failla's decision in *Paguada* was read into the record, a copy of that decision is annexed hereto as Exhibit A.

Plaintiff adequately alleges his intent to return to the subject website and complete his purchase of the T-Shirts he went shopping for, giving him standing to continue to seek injunctive relief.

For these reasons, it is respectfully submitted that the Defendant's Motion to Dismiss the Amended Complaint should be denied in its entirety.

Dated: September 19, 2022

Respectfully submitted,

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:        (732) 695-3282
*Attorney for the Plaintiff*
*Christopher Loadholt*

20